MARVELLA ANDERSON, Plaintiff-Appellee, *v.* THE CITY OF CHICAGO *et al.,* Defendants-Appellants.

(No. 59295;

First-District (4th Division)—June 11, 1975.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Robert R. Retke, Assistant Corporation Counsel, of counsel), for appellants.

Arthur Aaron Ellis and Morris W. Ellis, both of Chicago, for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This is an action for personal injuries brought by Marvella Anderson, a pedestrian, who was struck by a city of Chicago Police Department vehicle driven by defendant Laddie Vivrin. The case was tried by the court without a jury, and judgment was entered for plaintiff in the amount of $125,000. Defendants appeal.

On appeal, defendants contend (1) that the judgment is contrary to the manifest weight of the evidence; (2) that the court erred in admitting the testimony of a witness whose existence was not revealed until after the trial was commenced; and (3) that governmental tort immunity is a bar to recovery because the driver of the vehicle, defendant Vivrin, was engaged in the enforcement or execution of the law at the time of the occurrence.

The incident occurred on November 18, 1969, at approximately 7 P.M. in the vicinity of Lexington Avenue and Pulaski Road in the city of Chicago. Pulaski is approximately 50 feet wide and has a total of six lanes for movement in either a northbound or southbound direction.

Plaintiff testified that she was 35 years old at the time of the accident and was employed as an operator of a clothing press. She stated that she was at the southeast corner of Lexington and Pulaski and intended to walk across Pulaski to board a bus. Before entering the intersection, she looked to the south and then to the north. Observing no immediate traffic, she proceeded to walk west across Pulaski. When she reached the center line, she again looked to her right and saw no oncoming vehicles. As she reached the sixth and westernmost lane of traffic, she observed a squad car pull out from behind another car approximately one-half block north of Lexington. When she was approximately 6 feet from the curb, she was struck by the right front bumper of defendant Virvrin's police car. She estimated the vehicle's speed at 40 miles per hour, and testified that "he was in a full blaze of speed." Mrs. Anderson repeatedly stated that she was in the crosswalk at all times, including the moment when she was hit.

On cross-examination she testified that before starting to cross Pulaski, she observed two vehicles waiting for a red light two blocks north of Lexington at 5th Avenue. As she passed the center line, she continued to look north. She was walking fast, however, she was not hurrying. When

she almost reached the fifth lane, the cars began to move. She reiterated that she did not see the squad car until it pulled out from behind another vehicle which was one-half block north of Lexington.

Defendant Laddie Vivrin, the police officer who was the driver of the involved car, was called by plaintiff as an adverse witness under section 60 of the Civil Practice Act. He testified that he was involved in the accident and that it occurred at approximately 7:50 P.M. He was driving south on Pulaski. No cars were ahead of him. He did not see the plaintiff leave the curb, nor did he observe her crossing the northbound lanes. The first time he noticed her was when she was entering his lane—the southbound lane nearest the center line. At that point in time he was at the south crosswalk and she was approximately 55 to 60 feet away. In his deposition, however, he said that she was only 10 or 15 feet away. When he spotted the plaintiff, he applied his brakes and decreased his speed to approximately 10 to 15 miles per hour. He did not blow his horn. Plaintiff continued to cross Pulaski and eventually cleared the lane he was in. At that point in time he was beyond the south crosswalk. When plaintiff was 5 feet into the fifth lane, he accelerated to 20 miles per hour. As he was in the act of passing her, she suddenly made an about-face and stepped into the right front of his car. To avoid rolling over her, he wound up in a northbound lane. By the time he parked his car, she was being loaded into a wagon. He testified that at the time he had two prisoners in his car.

Plaintiff called two additional witnesses with regard to the site of the accident. One was Officer Tony Mugnolo who testified that he received a call to investigate the accident. He arrived at the scene at about 7:21 P.M. He stated that defendant Vivrin told him that the accident occurred at about 734 South Pulaski. When shown photographs of the area, he said, "Wherever 734 is on these pictures, that's where it happened, about where it happened." Plaintiff's exhibit in evidence places the south crosswalk as being located at 734 South Pulaski Road. Officer Mugnolo also drew a diagram from information given him by defendant Vivrin. The diagram depicted the accident as having occurred in the fifth lane. On cross-examination he was asked whether the accident occurred directly in front of 734 South Pulaski. He responded, "About there, in that area." In his police report he indicated that plaintiff was not in the crosswalk.

The other witness called by plaintiff was her sister, Johnnie Mae Thomas. She testified that she came to the scene after the accident occurred. Her testimony will be discussed in more detail infra when we consider the objections made to her right to testify.

Officer Adam Bilinski was called as a witness for the defense. He

testified that on the day in question he was called to assist Officer Vivrin with a disturbance at an A & P store. Vivrin took two juveniles who were involved in the accident into his car, and Bilinski took a security guard, the complainant, into his own car. They proceeded to Pulaski Road where they turned south. Vivrin was three car lengths directly in front of him. Bilinski first observed the plaintiff when she was 5 feet from the center line in the northbound lanes. As Vivrin was passing through the south crosswalk, Bilinski noticed his tail lights go on. He saw Vivrin slow down to 10 to 15 miles per hour to allow the pedestrian to cross. He observed plaintiff clear their lane of traffic and then suddenly turn around and walk against Vivrin's squad. She was lying in the southbound lane closest to the center approximately 60 to 65 feet south of the crosswalk.

Officer Steve Tkoletz also testified as a witness for the defense. He stated that he had occasion to respond to an injury call and that he and his partner got to the scene in about one minute. He saw two squad cars there. He put the plaintiff on a stretcher, placed her in their vehicle, and drove her to a hospital. He testified that she was on Pulaski possibly 70 feet south of the intersection with Lexington.

We first consider defendants' contention that the judgment is against the manifest weight of the evidence. Defendants stress that both Officers Vivrin and Bilinski testified that plaintiff turned back and walked into the squad car after she had reached a place of safety. They also point out that the testimony of three witnesses places the accident approximately 70 feet south of the crosswalk. Defendants argue that in such an instance, the courts have found a decision for the plaintiff to be unreasonable and untenable inasmuch as plaintiff, by her testimony alone, could not create a preponderance of the evidence, citing *Feldman v. Karn*, 247 Ill.App. 48. That case manifestly is not applicable on the facts. There plaintiff sued his former employer for a sum of money allegedly promised him in the presence of a witness to be paid upon his termination of employment. At trial the alleged witness denied hearing any such promise. Plaintiff offered no supporting evidence other than his own testimony. In reversing a judgment for the plaintiff, the court held that this was not a question of credibility, but rather only one of weighing the evidence, and that the plaintiff failed to prove his case by a preponderance of the evidence.

■ ■ It is plainly evident that the accounts of plaintiff and defendants as to how the accident occurred are in direct opposite, and a determination of what transpired lies chiefly in ascertaining the credibility of the witnesses. Clearly, this is not merely a question of weighing the evidence. It is long established that when testimony is contradictory, the determination of the credibility of witnesses and the weight to be afforded their

testimony are matters for the trier of fact, and its findings will not be disturbed unless they are manifestly against the weight of the evidence. For a judgment to be against the manifest weight of the' evidence, it must appear that conclusions opposite to those reached by the trier of fact are clearly evident or that the verdict is palpably erroneous. *Bouillon v. Harry Gill Co.*, 15 Ill.App.3d 45, 301 N.E.2d 627.

■■ It is readily apparent why defendants' argument is directed primarily toward the issue of contributory negligence. Clearly, the evidence and all proper inferences support a finding that Officer Vivrin negligently operated his squad car. However, we feel the court's specific finding that plaintiff exercised due care and caution for her own safety is also supported by the evidence. A contrary conclusion is not clearly apparent. Again, in large part, this is a matter of credibility and not merely the weight to be afforded the testimony. Given the circumstances of the accident, the court apparently found the defendants' version to be incredible. The fact that two police officers testified that plaintiff was not in the crosswalk and that she turned back into the car does not, of itself, show that the decision for plaintiff was against the manifest weight of the evidence. Plaintiff's testimony that she was in the crosswalk was corroborated expressly by Johnnie Mae Thomas and inferentially by Officer Mugnolo. The trial judge saw and heard the witnesses and we are unable to state that his judgment is against the manifest weight of the evidence.

Defendants next contend that the court erred in admitting the testimony of Johnnie Mae Thomas, plaintiff's sister, since her existence was not revealed until the day of trial. The record shows that defendants filed interrogatories on February 18, 1970, requesting among other things the name and address of each person who witnessed the occurrence and any person who was present or claimed to have been present at the scene immediately before, during, or after said occurrence. No answers were filed. When the cause was called for trial on November 17, 1972, defense counsel complained that plaintiff failed to comply with the court order to answer interrogatories. Plaintiff's counsel thereupon informed the court that he never received a copy of the interrogatories. Rather than delay the proceedings, the court requested counsel to answer the interrogatories in open court. In response counsel for plaintiff stated that other than the plaintiff herself, the only other witness was her sister, Johnnie Mae Thomas, who was present after the accident. Defendants moved to exclude her testimony and the motion was denied. Thereupon, the court granted defense counsel an opportunity to take her deposition, and stated that if need be, he would grant a continuance. The court also instructed plaintiff's counsel to prepare answers to the interrogatories over the weekend and deliver them to opposing counsel on the following Monday.

On November 22, Johnnie Mae Thomas was called as a witness, and defense counsel renewed his motion to exclude her testimony. He admitted that he had taken her deposition the preceding day. He commented that while taking her deposition, it became apparent that other members of her family were present at the scene including Daryl Anderson. Also present was a friend of Daryl who informed Johnnie Mae that her sister had been injured. The court stated: "I am going to permit her to testify  *  *  *. If it is necessary I will grant additional time before making a determination in this case."

Johnnie Mae Thomas testified that a small boy came to her house and told her that her sister had been in an accident. She went to the scene and found her sister lying in the crosswalk near the sidewalk. She stated that 734 South Pulaski Road is the location of the south crosswalk. On cross-examination she related that she did not know the name of the boy, nor could she describe him. After counsel for the defense rested his case, the following colloquy took place:

"THE COURT: What does the Defendant wish to do with reference to the Court's offer of permitting you a continuance so that you might be able to locate and perhaps interrogate the young man who allegedly called Johnnie Thomas.

MR. GROGAN: Your Honor, in view of the circumstances, and I do not at this time feel that witness would be able to be located. Therefore, I have no choice to tell this Court since I do not feel that that witness could be located not to delay the trial of this case further.

THE COURT: You do understand the Court is willing to offer you some time?

MR. GROGAN: I understand that, your Honor."

■■ We note from the outset that those sanctions to be imposed for failure to comply with discovery procedures rest largely within the sound discretion of the trial judge. (*Garofalo v. General Motors Corp.*, 103 Ill. App.2d 389, 243 N.E.2d 691.) The discretion is broad, and its exercise will not be disturbed unless an abuse is apparent. Supreme Court Rule 219 provides that the court may enter any order that is "just." (Ill. Rev. Stat. 1969, ch. 110A, par. 219.) As indicated in *Serpe v. Yellow Cab Co.*, 10 Ill.App.3d 1, 293 N.E.2d 742, a just order is one which, to the extent possible, insures both discovery and trial on the merits.

■■ We have reviewed the cases cited by defendants and find them to be distinguishable on the facts. Suffice it to say, those decisions involve extreme cases of bad faith, surprise, inadequate opportunity to investigate, or other such factors not present here. We emphasize that the case at bar was tried before the court sitting without a jury. We also note that

there is some question as to whether plaintiff's counsel received the requested interrogatories prior to trial. In any event, the interrogatories were answered. Defense counsel was offered a continuance by the court in order to allow sufficient opportunity to investigate the matter, but he declined. It can hardly be said that the defense was prejudiced to any significant degree. Under the instant circumstances we fail to see how the trial judge's conduct was inconsistent with the goal of insuring both discovery and a trial on the merits. Accordingly, we hold that the court did not abuse its discretion in permitting the witness to testify.

■■ Lastly, defendants contend that section 2—202 of the Local Governmental And Governmental Employees Tort Immunity Act bars recovery because defendant Vivrin was engaged in the enforcement or execution of law at the time of the occurrence. (Ill. Rev. Stat. 1969, ch. 85, par. 2—202.) The trial judge specifically found that although Officer Vivrin was on duty and in the course of his employment at the time of the occurrence, he was not enforcing or executing any laws. Accordingly, the trial judge held that the immunity provisions of section 2—202 were inapplicable. Whether a police officer is engaged in the enforcement or execution of the law is a factual determination which in every case must be made in light of the circumstances involved. (*Arnolt v. City of Highland Park*, 52 Ill.2d 27.) We believe that the evidence supports the finding of the trial judge.

We find no error in this record requiring a reversal of the judgment or a remandment of the cause for a new trial.

Judgment affirmed.

DIERINGER, P. J., and JOHNSON, J., concur.