FANNIE THOMPSON, Plaintiff-Appellee, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (4th Division)   No. 83—1805

Opinion filed October 11, 1984.

ROMITI, J., dissenting.

James D. Montgomery, Acting Corporation Counsel, of Chicago (Jerome A. Siegan and Robert J. Dargis, Assistant Corporation Counsel, of counsel), for appellants.

John B. Cashion and Martin B. Forbes, both of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Fannie Thompson, sued defendants, the city of Chicago and Thomas Daley, for injuries she sustained when struck by an unmarked Chicago police car driven by Daley. The jury returned a verdict in her favor in the amount of $62,510. Defendants raise the following issues for review: (1) whether the trial court erred in directing a finding that Officer Daley was not executing or enforcing a law at the time of the accident and erred in failing to direct a finding that Daley was executing or enforcing a law at the time of the accident, and (2) whether the trial court committed prejudical errors regarding the jury which denied defendants a fair trial.

We affirm.

At trial, plaintiff, 60 years of age and a diabetic, testified that on the evening of November 30, 1979, she intended to go to a leather coat sale at the International Amphitheatre in Chicago, with her three daughters and one of her grandchildren. They traveled to the Amphitheatre by taxicab and exited the cab between 42nd and 43rd streets and Halsted Street. They crossed the street, and while walking through the parking lot they noticed 50 to 65 teenagers running. Plaintiff and her relatives started walking back toward Halsted Street. She did not hear any shots, sirens, screams or any other noises. Plaintiff instructed one of her daughters to pick up the grandchild, and the next thing she remembered was a car hitting her in the back from the rear. She never saw the car approach. She was under the car up to her shoulders. She felt pain in her head, shoulder, back, legs, arms and abdomen. At the time of the accident, plaintiff weighed 250 pounds.

Plaintiff was taken to Michael Reese Hospital. On the next day, her spleen was removed. She remained in the hospital for two weeks, but returned a week later. Plaintiff described the treatment she received in the hospital. She stated that since the accident she cannot stand for long periods of time, and she cannot do her own housework as she once did.

Thomas J. Daley, a Chicago police officer, was called as an ad-

verse witness. On the evening of November 30, 1979, he was assigned with his partner, Ralph White, to patrol the International Amphitheatre, where a rock concert was scheduled. Daley and White were in uniform and in an unmarked police car which was equipped with a siren and flashing headlights. When Daley drove into the parking lot between 8 and 8:30 p.m., he observed a disturbance near a gate in the north wall of the building. Daley saw about 100 youths and two ushers by a door. He thought the ushers were in danger. Daley drove forward, then stopped the car and radioed for assistance. Daley activated a siren which sounded for 60 seconds while the car moved forward. After people began running, the car was hit with bottles, wood and bricks, although Daley did not see bottles or bricks hitting the car. He observed another unmarked police car approach the scene. He did not activate the flashing headlights. It was Daley's intention to back out of the range of the thrown objects. He backed up 30 to 40 feet at about 10 miles per hour. Neither the front nor the back windshield of the car was damaged. Daley never felt the car hit anyone, but he heard a woman yelling and screaming. She told him there was a woman under the car. Daley observed that the tire was on top of plaintiff's left thigh. He then drove the car off her leg.

Dherem Paul, a physician, testified that he treated plaintiff before and subsequent to her accident. He examined pertinent medical records and stated that the accident on November 30, 1979, caused her ruptured spleen.

Mitchell Krieger, also a physician, testified that he first examined plaintiff on January 7, 1980. She complained of pain in her low back area. Krieger had plaintiff admitted to a hospital for diagnosis and therapy. Her principal problem was low back pain. According to Krieger, this condition seemed to be causally related to the accident.

Hallie Mays, plaintiff's daughter, accompanied her mother to the Amphitheatre on November 30, 1979. As she, her sisters, her daughter and plaintiff were walking through the parking lot, she saw people running toward them. Mays told her mother, "Let's not go any further." They turned around and Mays began talking. She was addressing her mother, but when she received no response she turned and saw her mother on the ground and a car running over her; the tire was on her mother's legs. Mays shouted to the driver to stop the car. After the driver observed plaintiff under the car, he moved the car. Just prior to the accident, Mays did not hear any noises.

Ralph White, Officer Daley's partner, testified that when he noticed the disturbance in the Amphitheatre he radioed for assistance. Daley turned on the siren for a few seconds, and they heard a noise

coming from behind which sounded momentarily like that of a shotgun blast. White "hit the floor" and Daley put the car in reverse.

Paul Garry was on duty as an usher on the evening of November 30, 1979. He was working as a cashier with Steven Mrowczynski. They were seated inside an automobile. People were trying to get inside the Amphitheatre without paying. He saw people throwing objects which he could not identify. Garry's attention was attracted toward plaintiff by the sound of bottles breaking and objects thrown. Just before the accident, Garry saw people running; then he saw the car move backward and then slide. He saw plaintiff in a crouching position, but he did not see her being hit by the car.

Steven Mrowczynski substantially corroborated Garry's testimony. Before the accident, Mrowczynski saw people throwing rocks and bottles. Just before she was hit, plaintiff was bending over and pushing a child out of the way.

Plaintiff's counsel then read to the jury the life expectancy for a woman of plaintiff's age and race, which was 21.2 years. Plaintiff then rested.

Defendant called plaintiff as its first witness. She stated that she did not see the car hit her and that she was trying to get out of the way of the people who were running when she was injured.

Arnold Sikler, a police officer, was assigned to investigate the accident and arrived within a few minutes of being informed of the occurrence. It was snowing.

Joseph Botwinski, Jr., a police officer, received the report of a disturbance at the Amphitheatre on the night in question. When he arrived, he observed 100 to 120 youths trying to enter the building. They were throwing objects toward the police car which ultimately struck plaintiff. Botwinski heard the car's siren. He saw the car back up and he saw three individuals to the left and behind the car, but he did not see the impact.

Officer Daley again described the circumstances of the accident.

Marc Pomerantz, a physician, reviewed plaintiff's medical records. He stated that there is no definite proof that adults who have lost their spleens have increased incidence of infection. Patients who are overweight frequently suffer low back pain.

The trial court ruled that, as a matter of law, Officer Daley was not executing or enforcing a law at the time the accident occurred.

At 12:30 p.m. on May 10, 1983, the jury retired to begin its deliberations. Later that day, at 5:10 p.m., the trial court advised attorneys for plaintiff and defendants that he had received two communications from the jury. The first communication stated:

"We the jury request the following information to be given to us for consideration to reach a verdict: (1) First Michael Reese Admittance; (2) Hospital report for fall out of bed; (3) Diagram of the parking lot."

The judge's response was:

"You have heard in full all the evidence. The items you request are not a part of this—are not a part of the evidence in this case. You should refer to the instructions and not give guess or speculate."

The second communication stated:

"With regard to the special interrogatory, should there be no answer, can there be an award to the Plaintiff?"

The judge's response was:

"You heard all arguments from Counsel on this issue. I cannot, under the law, give you any answer to your question. You must decide the case without an answer to your question from me on this point."

The special interrogatory stated as follows:

"Prior to and at the time of the occurrence, was THOMAS J. DALEY guilty of negligence which was a proximate cause of the injury to the plaintiff."

At 7 p.m., the trial judge called the jury from its deliberations. He asked the foreman whether the jurors were having difficulty reaching a verdict. The foreman gave the judge a note which stated:

"We have reached a deadlock on the special interrogatory as to the guilt of Thomas J. Daley. Need advice as to how to proceed."

The court asked the foreman whether there was a chance the jury could reach a unanimous agreement if given additional time. The foreman responded that "the possibilities are remote" and "the probability is the impasse undoubtedly will remain."

The foreman affirmed that the jury had reached a verdict but had not answered the special interrogatory. The judge asked for and received the verdict. Counsel for defendants asked for a mistrial on a theory that looking at the verdict precluded the jury from changing it. This motion was denied. In open court, the trial judge directed the jury to continue its deliberations until it reached a unanimous decision.

After further deliberation, the jury answered the special interrogatory in the affirmative. The judge then stated that he would talk to the jury outside the presence of both attorneys because "when I talk, I don't want either one of you here because I don't want to give any-

body ideas." When counsel returned to court, the jury was polled. The jury found for plaintiff and against defendants in the amount of $65,800, which was reduced to $62,510 because of plaintiff's contributory negligence of 5%. Defendants appeal.

The first issue raised by defendants is whether the trial court erred in directing a finding that Officer Daley was not executing or enforcing a law at the time of the accident because the jury easily could have found that the officer was involved in executing or enforcing numerous laws and ordinances. Defendants claim that Officers Daley and White were not merely on duty but were "virtually under siege" when they arrived on the scene. They took immediate action to break up the crowd and to protect private property and the ushers. They never abandoned this purpose even though they momentarily believed they had been fired upon.

In the instant case, the standard for determining whether the trial court erred in directing a finding in plaintiff's favor is whether all the evidence, when viewed in its aspect most favorable to defendants, so overwhelmingly favors plaintiff that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

■ Section 2—202 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1977, ch. 85, par. 2—202) provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes wilful and wanton negligence." This provision does not necessarily include all the activities of a public employee during all of his hours on duty. To construe this section as affording immunity from liability except for wilful and wanton negligence during all the time a public employee is on duty is unwarranted by the language used by the legislature. The immunity granted a public employee for his negligent acts extends only to the act or omission done while in the actual execution or enforcement of a law and not to every act or omission done while on duty as a public employee. *Arnolt v. City of Highland Park* (1972), 52 Ill. 2d 27, 33, 282 N.E.2d 144, 147.

■ At trial, plaintiff conceded that Officer Daley did not deliberately cause her injuries. Thus, to recover, plaintiff had to establish that Daley was not executing or enforcing a law when she was injured. Daley testified that there was a disturbance involving approximately 100 youths, that he thought the ushers were in danger, but that when he backed up his vehicle he was trying to get out of the way of flying debris. In our opinion, the trial court properly deter-

mined that, as a matter of law, Officer Daley was not in the act of enforcing or executing a law at the time the accident occurred. Although Officer Daley may have had a general intent to protect private property and the ushers, his act of reversing the vehicle was an act of getting out of the way, not an act of executing or enforcing any law. Since we hold that the trial court properly directed a finding that the police officer was not executing or enforcing a law, it necessarily follows that the trial court did not err in failing to direct a finding that the police officer was executing or enforcing a law at the time the accident occurred.

Next, defendants complain that the trial judge committed prejudicial error regarding his conduct with the jury, the cumulative effect of which denied them a fair trial. They find objectionable that part of the closing argument of plaintiff's counsel in which he stated that Officer Daley was an agent of the city, and if he was negligent, the city was negligent. Plaintiff's counsel said: "We want the City of Chicago to be liable in this case so that the City will be responsible to pay the judgment."

■ Defendants admit that they did not object to these remarks when they were made. We do not understand, nor do defendants explain, how these remarks prejudiced them, since no claim is made that the remarks misstate the law or unnecessarily inflame the jury. In our opinion, the statements merely reflect plaintiff's position.

Defendants argue that the trial court coerced the jury's verdict. They contend that the jurors were less reluctant to hold the city liable because they reached a unanimous decision on the general verdict. However, the jury also inquired whether plaintiff could still recover if Officer Daley were found not guilty of negligence. Defendants note that the jury returned the special interrogatory answered in the affirmative 30 minutes after they were advised by the trial court to continue deliberations until they reached a unanimous decision. Defendants complain that the instruction contained no warning that no individual juror should relinquish his or her conscientiously held conviction. They claim that the instruction had the effect of unduly pressuring the holdout juror to heed the majority for the mere purpose of returning a decision. Defendants cite *United States ex rel. Tobe v. Bensinger* (7th Cir. 1974), 492 F.2d 232, for the proposition that any influence which emphasizes the importance of agreement to the exclusion of the dictates of individual conscience is inherently coercive and prejudicial.

We disagree with defendants' contention. The general verdict was not coerced—the jury had already decided the general verdict when

the trial judge inquired as to whether they were having difficulty. Also, in our opinion, the special interrogatory was not coerced.

■ We have examined the remarks made by the trial judge in instructing the jury to continue deliberating on the special interrogatory. We cannot infer that because of their earlier inquiry they felt coerced to answer affirmatively when instructed to continue deliberations. The jury deliberated for 30 minutes before reaching a decision. Although it may have been a better practice to caution the jurors not to abandon conscientiously held beliefs for the sake of a unanimous decision (*cf. People v. Prim* (1972), 53 Ill. 2d 62, 75, 289 N.E.2d 601, 609 (jury deadlocked on verdict), *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731), we do not believe that the absence of such a warning constitutes reversible error in the instant case.

■ Finally, defendants argue that prejudicial error occurred when the trial court talked to jurors outside the presence of counsel after the verdicts were read and before the jury was polled, and they cite *United States ex rel. Tobe v. Bensinger* (7th Cir. 1974), 492 F.2d 232, for the proposition that communications between the judge and jury during deliberations outside the presence of counsel are presumptively prejudicial. In our opinion, that case is inapposite because the communication between the judge and jury occurred after the jury's deliberations and after the verdicts were read and not before or during deliberations. We note that defendants did not object when the trial judge said he would speak to the jurors outside the hearing of counsel.

In conclusion, we hold that the trial judge did not commit prejudicial error regarding his conduct with the jury.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN, P.J., concurs.

JUSTICE ROMITI, dissenting:

Because I believe the trial court erred in finding as a matter of law that Officer Daley was not executing or enforcing the law at the time of the accident, I must respectfully dissent.

Viewing all the evidence in its aspect most favorable to defendants establishes the following chain of events. Officers Daley and White, two uniformed Chicago police officers, were assigned in their

unmarked police car to patrol the area near the International Amphitheatre, the scene of a rock concert. They saw a group of approximately 100 people who were trying to storm the Amphitheater without paying. Arrayed against this bottle-throwing mob were two ushers. Officer Daley believed these ushers to be in physical danger and after radioing for assistance he drove his car toward the group with his siren on. He specifically testified that in doing so his intent was to disperse the crowd, rescue the ushers, and prevent property damage. The officers came under attack. Their car was struck by bottles, bricks, and other objects, including one which struck the car with such force as to cause them to believe they were being fired upon. Officer Daley backed up his vehicle in an attempt to get out of range of these missiles. At this point the plaintiff was run over by the vehicle.

The majority appears to concede that Officer Daley was acting to enforce the law when he drove the police car toward the mob. But because the officers then came under attack and were forced to retreat, the majority holds that as a matter of law this momentary retreat was not part of that law enforcement function. This construction defies logic and does not comport with the directive of our supreme court to give to the phrase "the execution and enforcement of any law" its plain and commonly accepted meaning. (*Arnolt v. City of Highland Park* (1972), 52 Ill. 2d 27, 33, 282 N.E.2d 144, 147.) The trial court's action prevented the jury from determining whether they believed the facts of the accident to be in accord with our best-case summary of the defendants' evidence as outlined above and then determining whether the officer was acting to enforce the law at the time of the accident. This despite the fact that such a determination is ordinarily one for the fact finder to make after consideration of all the facts and circumstances presented in the case. *Arnolt v. City of Highland Park* (1972), 52 Ill. 2d 27, 35, 282 N.E.2d 144, 148-49; *Anderson v. City of Chicago* (1975), 29 Ill. App. 3d 971, 977, 331 N.E.2d 243, 248.

I would reverse and remand the cause for a new trial at which defendants would have the opportunity to have the fact finder determine this critical issue.