(No. 70749.—)

PATRICIA AIKENS, Appellee, v. EUGENE MORRIS *et al.*, Appellants.

*Opinion filed November 21, 1991.*

274

BILANDIC, J., took no part.

Dowd & Dowd, Ltd., of Chicago (Robert C. Yelton III, Philip J. McGuire and Joel Ostrow, of counsel), for appellants.

Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Howard A. London, of counsel), for appellee.

Thomas W. Kelty and Stanley L. Morris, of Pfeifer & Kelty, P.C., of Springfield, for *amicus curiae* Illinois Municipal League.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal and Lynn Kristine Mitchell, of counsel), for *amicus curiae* City of Chicago.

Peter F. Zullo, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Patricia Aikens, filed a personal injury action in the circuit court of Cook County against defendants, Eugene Morris and the City of Evanston. Plaintiff sought to recover damages sustained when

her automobile was struck by an Evanston police squad car driven by police officer Morris. Defendants raised as a defense sections 2—202 and 2—109 of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (Ill. Rev. Stat. 1979, ch. 85, pars. 2—202, 2—109). Section 2—202 provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton negligence," while section 2—109 provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."

At the close of plaintiff's case and again at the close of all of the evidence, defendants moved for a directed finding based on sections 2—202 and 2—109 of the Act (Ill. Rev. Stat. 1979, ch. 85, pars. 2—202, 2—109). The trial court denied both motions, ruling that while Morris was on duty at the time of the accident and in the course of his employment, he was not executing or enforcing any law as provided by the Act. Following final arguments, the trial court found in plaintiff's favor, assessed damages, apportioned negligence and entered judgment for plaintiff. A divided appellate court affirmed. 201 Ill. App. 3d 404, 408.

The appellate majority based its affirmance upon *Arnolt v. City of Highland Park* (1972), 52 Ill. 2d 27, and *Anderson v. City of Chicago* (1975), 29 Ill. App. 3d 971, finding that more recent decisions of this court (*Thompson v. City of Chicago* (1985), 108 Ill. 2d 429, and *Fitzpatrick v. City of Chicago* (1986), 112 Ill. 2d 211) did not support reversal. In doing so, the majority stated that certain "expansive" language in *Fitzpatrick* should not be taken out of context to bar actions against municipal officers, where the "act com-

plained of is connected with their more routine job duties."

Defendants subsequently filed a petition for rehearing and alternative application for certificate of importance, which the appellate court denied. (134 Ill. 2d R. 316.) We granted defendants' petition for leave to appeal (134 Ill. 2d R. 315(a)) and allowed *amicus curiae* briefs from the Illinois Municipal League, the City of Chicago, and the Illinois Trial Lawyers Association.

The sole issue presented for review is whether defendants' motion for a directed verdict, based upon section 2—202 immunity, was properly denied. Having fully considered the issue, we affirm.

The following facts were adduced at trial and are not in dispute. On July 1, 1979, at approximately 2:45 a.m., Evanston police officer Eugene Morris and his partner were proceeding eastward on Emerson Street in an Evanston police squad car. Seated in the back seat of the car was a prisoner being transported from a Village of Skokie lockup facility to the Evanston police department's lockup facility. The prisoner had been previously placed under formal arrest and was handcuffed. Neither the siren nor the mars light of the squad car was activated, and, according to Morris' testimony, he was in "no hurry."

At about the same time, the plaintiff was driving her auto northwards on Dodge, a thoroughfare which intersected Emerson Street. The two vehicles collided as they entered the intersection.

## DISCUSSION

Defendants' interpretation of section 2—202 immunity and this court's decisions in *Thompson* and *Fitzpatrick* is that "no matter what official function" is performed by a police officer, the officer and the employing municipality can only be held liable for wanton

and willful misconduct. Defendants contend that the decision below is, thus, contrary to *Thompson* and *Fitzpatrick*, which interpreted the "enforcement" of law, under section 2—202, as "a course of conduct." (*Fitzpatrick*, 112 Ill. 2d at 221.) Defendants maintain that the appellate court improperly rejected this "rule" and instead established a factual distinction, not contemplated by the language of section 2—202, between a police officer's "more routine" and "less routine" job duties. 201 Ill. App. 3d at 408.

Defendants posit that, in fact, Officer Morris was "executing" or "enforcing" a law, within the meaning of section 2—202, since Illinois statutes empower public officials to move or transfer prisoners (Ill. Rev. Stat. 1979, ch. 75, par. 61; Ill. Rev. Stat. 1979, ch. 125, par. 203). As further support, defendants argue that if acts of State officials are considered "under color of law," for purposes of attachment of liability under Federal statute (42 U.S.C. §1983 (1988)), then such acts must also be in execution or enforcement of law as intended by section 2—202 of the Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, par. 2—202).

The Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, par. 1—101 *et seq.*) is the legislative response to this court's decisions in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, and *Harvey v. Clyde Park District* (1964), 32 Ill. 2d 60. (Ill. Rev. Stat. 1981, ch. 85, par. 1—101 *et seq.*) In *Molitor*, the court effectively abolished the long-standing common law doctrine of municipal immunity for tort liability. In *Harvey*, the court noted the constitutional deficiency of certain legislation, enacted in response to *Molitor*, which sought to immunize park districts and their employees. (Ill. Rev. Stat. 1963, ch. 105, par. 12.1—1.) The Tort Immunity Act, as such, is an attempt to create certain uniform rules of immunity as exceptions to the general rule

of municipal liability recognized in *Molitor*.[1] Thus, the Tort Immunity Act is in derogation of the common law action against local public entities, and must be strictly construed against the public entity involved. *Rio v. Edward Hospital* (1984), 104 Ill. 2d 354, 362.

In *Arnolt v. City of Highland Park* (1972), 52 Ill. 2d 27, this court recognized that a public employee is not afforded section 2—202 immunity for all activities in the performance of his or her duties. (*Arnolt*, 52 Ill. 2d at 33.) The court considered a construal of section 2—202 which afforded immunity from liability, except for willful and wanton conduct, during all the time a public employee is on duty, as being unwarranted by the language used by the legislature. (*Arnolt*, 52 Ill. 2d at 33.) We hold firm in that belief. As stated, "[t]he words 'in the execution or enforcement of any law,' should be given their plain and commonly ascribed meaning." *Arnolt*, 52 Ill. 2d at 33.

We presume also that the legislature was aware of language, as in the indemnity provisions of sections 1—4—5 and 1—4—6 of the Municipal Code, providing that the public entity shall indemnify a policeman while he "is

---

[1] We note, however, in an effort to preserve the clarity of our jurisprudence, that section 4—102 of the Tort Immunity Act codifies the separate common law rule that municipalities or their employees are not liable for failure to supply police or fire protection. This long-standing rule survived *Molitor*. (See *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 363.) Under the rule, a police department's duty to preserve the well-being of the community is owed to the public at large, rather than specific individuals. (*Huey*, 41 Ill. 2d at 363; *Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172, 176.) The duty is so limited because of strong public policy considerations which seek to avoid placing police departments in the untenable position of guaranteeing the personal safety of each individual in the community. See *Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 445-46.

engaged in the performance of his duties as a police-man" (Ill. Rev. Stat. 1981, ch. 24, pars. 1—4—5, 1—4—6), but that the legislature deliberately chose not to employ such broad language in section 2—202. (See *Arnolt*, 52 Ill. 2d at 31-32; Ill. Rev. Stat. 1981, ch. 85, pars. 4—104, 4—105, 5—103, 6—103, 6—105, 6—106, 6—107, 6—109 (immunity provided to local public entities and public employees where the employee is "acting within the scope of his employment").) As such, we view section 2—202 as a reasoned effort to carve out an exception to the general rule of negligence liability appropriate to the particular governmental function it addresses. It represents an attempt to assure to the community those benefits accruing from both an energetic execution and enforcement of laws as well as a proportioned sharing of risk. We note, parenthetically, also, that the possibility of indemnification of a police officer under the indemnity provisions (Ill. Rev. Stat. 1979, ch. 24, pars. 1—4—5, 1—4—6), following a finding of negligence liability, minimizes any adverse effects which may impact upon the individual officer or the vigorous enforcement of law. Accordingly, we reject defendant's argument that section 2—202 was intended to immunize the negligent performance of all official functions and duties by police.

We also disagree with defendant's view that *Thompson* and *Fitzpatrick* broaden section 2—202 immunity to that extent. In *Thompson*, the plaintiff conceded that the defendant police officer was enforcing the law as he moved his car forward in an attempt to disperse an unruly crowd. We held that the officer's backwards maneuver of his auto out of range of the crowd's attack was part of the officer's "course of conduct" in enforcing the law. (*Thompson*, 108 Ill. 2d at 433.) We rejected the trial court's view that the officer ceased to be engaged in enforcing the law when he defended himself by moving his car backwards. "Enforcing the law is rarely a single,

discrete act, but is instead a course of conduct." (*Thompson*, 108 Ill. 2d at 433.) *Thompson* does not remotely suggest, however, that police actions which are other than "in execution or enforcement of law" are immunized. *Thompson* only broadens the focus of inquiry from simply a singular, allegedly negligent act to a cognizable and related group of actions, all of which must be, for purposes of section 2—202 immunity, "in execution or enforcement" of law.

In *Fitzpatrick*, this court did not agree with the plaintiff's interpretation of section 2—202, which would have granted immunity only where the specific, allegedly negligent act (the act of parking a squad car) was one of "execution or enforcement." Citing *Thompson*, the court held that such an interpretation was " 'overly narrow.' " (*Fitzpatrick*, 112 Ill. 2d at 221, quoting *Thompson*, 108 Ill. 2d at 434.) The court reiterated the view that enforcing the law is most often a course of conduct and expressed the view that the immunity ought to be available where an officer is engaged in a course of conduct to enforce or execute any law. (*Fitzpatrick*, 112 Ill. 2d at 221.) In doing so, however, this court did not repudiate the holding in *Arnolt* that a police officer is not *ipso facto* engaged in the "execution or enforcement" of law simply because he is on duty within the scope of his employment. (*Fitzpatrick*, 112 Ill. 2d at 220-21.) The court recognized that, under certain circumstances, parsing each one of a police officer's individual, yet related, actions resulted in a mechanistic and unrealistic approach to what constitutes "enforcement" of law. Once again, the court sought to broaden the focus of inquiry from simply the specific act to the limited enforcement activity in which the police officer was engaged. Certainly, also, by use of the term "course of conduct," the court intended the focus to be upon activities that have definite and cohesive parameters. The adoption of such

an approach, however, in no way abrogates the principle that section 2—202 immunity is a limited immunity, which dimensions are narrower than the scope of a police officer's employment or his performance of official functions and duties.

We recognize no "growing line of jurisprudence" in appellate decisions, in the direction that defendant suggests, either commencing before *Thompson* and *Fitzpatrick*, or evolving since. (See *Trepachko v. Village of Westhaven* (1989), 184 Ill. App. 3d 241, 247.) In *Trepachko*, upon which defendants rely, the trial court dismissed the complaint on the basis that plaintiff had not alleged the "special duty" relationship exception to the common law rule (codified in section 4—102 of the Tort Immunity Act) that municipalities and their employees are not liable for failure to provide police protection. (Ill. Rev. Stat. 1981, ch. 85, par. 4—102. See *Huey*, 41 Ill. 2d 361.) The appellate court affirmed on that basis, finding that sections 2—202 and 2—109 also supported dismissal. *Trepachko*, 184 Ill. App. 3d at 250-51.

In considering sections 2—202 and 2—209 immunity, the court recognized that the appropriate analysis begins with a determination of whether the public employee was executing or enforcing law at the time of the subject incident. Indeed, the court accepted this court's holding in *Arnolt* that immunity is not afforded for every act or omission by public employees during their hours of duty. (*Trepachko*, 184 Ill. App. 3d at 247.) In terms of the facts, the court was confronted with police actions which were clearly "in the execution or enforcement" of law as that phrase has been applied in our previous decisions (*Arnolt*, 52 Ill. 2d 27; *Thompson*, 108 Ill. 2d 429; *Fitzpatrick*, 112 Ill. 2d 211), and correctly determined that the issue was not in dispute in the case.

Defendants make much of the *Trepachko* court's comment that "there is a continually growing line of juris-

prudence finding that police officers *are* immunized from liability for acts of ordinary negligence committed when they are providing police services [citations]." (Emphasis in original.) (*Trepachko*, 184 Ill. App. 3d at 247.) Defendants have not indicated, but the comment continues, "or executing, enforcing or implementing any law [citations]." (*Trepachko*, 184 Ill. App. 3d at 247.) The problem with defendants' reliance upon the partial comment as evidence of a legal trend is twofold. First, the comment is taken out of context. It is important to note the starting point of the court's discussion. The comment is a response to the plaintiff's unsupported and broad assertion that a police officer is not immune from liability without exception for acts of ordinary negligence. The court's comment was, thus, not intended to convey that jurisprudence had expanded section 2—202 immunity beyond the conceptual confines of "execution and enforcement" of law.

Secondly, defendant's reliance upon the partial comment suffers because that portion of the comment does not address section 2—202's limited immunity, but rather the common law blanket immunity, codified in section 4—102, which immunizes a municipality and its employees for the failure to provide police protection. (Ill. Rev. Stat. 1979, ch. 85, par. 4—102. *Huey*, 41 Ill. 2d 361; *Long v. Soderquist* (1984), 126 Ill. App. 3d 1059.) Section 4—102 immunity may apply in the context where police officers are simply "providing [or failing to provide] police services," but section 2—202 immunity requires more particular circumstances for its application, *i.e.*, an act or a course of conduct "in the execution or enforcement" of law. Ill. Rev. Stat. 1979, ch. 85, par. 2—202. See *Jamison v. City of Chicago* (1977), 48 Ill. App. 3d 567, 569.

Defendants further rely upon *Long*, 126 Ill. App. 3d 1059, and *Morris v. City of Chicago* (1985), 130 Ill. App.

3d 740, as support for their theory of a "growing line of jurisprudence." *Long*, however, as indicated, does not concern section 2—202, but rather section 4—102 immunity which is supported by different policy considerations. See *Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443; *Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172.

With respect to *Morris*, we likewise do not believe that it supports defendants' assertion that police officers are immunized for ordinary negligence liability merely when "engaged in their duties." The police officer in *Morris* was responding to an "in progress" call of a man with a gun and proceeded in his police vehicle with siren on and headlamps flashing. As he approached the designated area, he turned off the siren, but left on the headlamps. His vehicle slowly approached the area, but slid on ice. The appellate court specifically cited *Arnolt* for the proposition that section 2—202 immunity extended only to negligence in the actual execution or enforcement of law and not to every act or omission done while on duty as a public official. (*Morris*, 130 Ill. App. 3d at 743.) The court affirmed the trial court's directed verdict in the defendants' favor on the basis that the officer was responding to an actual call to enforce or execute law. (*Morris*, 130 Ill. App. 3d at 744.) The decision evidences no trend in the asserted direction. To the contrary, the decision supports the view that section 2—202 immunity is proper under limited circumstances.

In light of this discussion, in the present case, we do not believe that the decision below is contrary to *Thompson* and *Fitzpatrick*, which viewed the "enforcement" of law as most often a "course of conduct." (*Fitzpatrick*, 112 Ill. 2d at 221.) As we have previously made clear, the adoption of such an approach does not diminish the vitality of *Arnolt*. In the present case, the appellate court affirmed the trial court's denial of defendants' mo-

tion for a directed verdict on the basis that Officer Morris was not enforcing or executing a law at the time of the accident by transporting an arrestee. The appellate court did not so much reject a "course of conduct" approach to the police action in question, so much as it found no need to specifically address and apply the approach. No issue was raised concerning any differentiation of defendant Morris' individual actions as was the case in *Thompson* (a single, backwards, defensive action allegedly ceased to be "enforcing" law) and *Fitzpatrick* (parking of vehicle to investigate allegedly not "enforcing" law). To that extent, the analysis necessary here is similar to that in *Arnolt* or *Anderson v. City of Chicago* (1975), 29 Ill. App. 3d 971, where a single, continuous action was analyzed. In the present case, the only issue before the court concerned whether the driving of an arrestee is immunized police activity under section 2—202. That activity, since it was unbroken, is capable of characterization as either an act or a course of conduct. We are convinced that, in either case, the appellate court viewed it appropriately. That the opinion distinguishes *Thompson* and *Fitzpatrick* on their facts in no way supports defendants' position that the court rejected their holdings.

Consequently, we do not view the appellate court's statement, that "deceptively broad language *** in *Fitzpatrick* cannot be isolated from its proper context *** to serve as a bar *** whenever the act *** is connected with *** more routine job duties," as anything more than a justifiable distinction under the circumstances of the present case. It is clear, too, that the phrase "more routine job duties" is simply the appellate court's characterization of those activities which it did not consider to be "in execution or enforcement" of law within the meaning of section 2—202. We believe that such a phrase is not intended to convey, nor will it be applied to create,

a factual distinction based upon routineness of duties. Clearly, the plain language of section 2—202 and our decisions in *Arnolt, Thompson,* and *Fitzpatrick,* interpreting that language, informed the court's ultimate determination here.

Lastly, defendants contend that Officer Morris was, in fact, enforcing and executing laws which authorize wardens and superintendents of penal institutions to "recommit" convicted prisoners to confinement in other penal institutions (Ill. Rev. Stat. 1979, ch. 75, par. 61), and allow county departments of corrections to transfer prisoners between facilities (Ill. Rev. Stat. 1979, ch. 125, par. 203). However, the record reflects that defendants did not assert these statutes in the trial court or the appellate court. Any arguments based thereon, or on 42 U.S.C. §1983, were, thus, not a part of the record before either the trial or appellate courts when the appropriateness of defendants' motion for a directed verdict was decided. See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.

Even so, section 1 of the Prisoner Interchange Act (Ill. Rev. Stat. 1979, ch. 75, par. 61) concerns prisoners who have been committed for imprisonment, and section 3 of the County Department of Corrections Act (Ill. Rev. Stat. 1979, ch. 125, par. 203) empowers the county department of corrections, not municipal police officers. Furthermore, even if such statutes authorized or allowed Officer Morris to transport an arrestee, virtually every police function or duty is pursuant to some legal authorization in the broadest sense. (See Ill. Rev. Stat. 1979, ch. 24, pars. 11—1—1, 11—1—2, 7—4—8.) Arguably, then the performance of any task while on duty is in enforcement or execution of the law. We do not believe, however, as we have previously stated, that the legislature intended such a result.

The determination of whether an officer is executing or enforcing a law is a factual one which must be made in light of the circumstances in each case. (*Arnolt*, 52 Ill. 2d at 35.) Unlike the facts of *Thompson* and *Fitzpatrick*, Officer Morris' negligent conduct was not shaped or affected in any manner by the nature of duties in either enforcing or executing law. However, the circumstances in the present case are quite similar to those of *Anderson v. City of Chicago* (1975), 29 Ill. App. 3d 971. In *Anderson*, the appellate court viewed a record which showed that a police officer was transporting, at the time of the accident, two juveniles picked up from the scene of a disturbance, with another police vehicle following and escorting the complainant. The *Anderson* court determined that the evidence supported the trial court's findings that the officer was not enforcing or executing any laws, even though he was on duty and in the course of his employment. We are similarly compelled. Viewing the record in the light most favorable to the plaintiff, we cannot say that it so overwhelmingly favors defendants that no contrary verdict based on that record could ever stand. (See *Loitz v. Remington Arms Co.* (1990), 138 Ill. 2d 404, 426; *Pedrick*, 37 Ill. 2d at 510.) We conclude that a directed verdict in defendants' favor was properly denied based upon the record before us.

Accordingly, we affirm the judgment of the appellate court.

*Judgment affirmed.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.