# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Stehlik v. Village of Orland Park*, 2012 IL App (1st) 091278

---

| | |
|---|---|
| Appellate Court Caption | DOLORES STEHLIK and JERRY STEHLIK, Plaintiffs-Appellants, v. VILLAGE OF ORLAND PARK, a Municipal Corporation, and GERALD KELLY, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-09-1278 |
| Rule 23 Order filed | June 30, 2011 |
| Rule 23 Order withdrawn | February 16, 2012 |
| Opinion filed | February 17, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries suffered when plaintiffs' vehicle was struck by a police officer's squad car, the trial court properly entered a directed verdict against plaintiffs and dismissed the action based on the finding that the officer and the village where he was employed were immune from liability under the Tort Immunity Act because the officer was engaged in the execution or enforcement of the law at the time of the collision and there was no evidence that the officer acted willfully or wantonly. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-L-231; the Hon. Robert Lopez Cepero, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael Mahoney, of Mahoney & Damico, of Chicago, for appellants.

James W. Fessler, James V. Ferolo, and Howard C. Jablecki, all of Klein Thorpe & Jenkins, Ltd., of Chicago, for appellees.

Panel

JUSTICE HOWSE delivered the judgment of the court, with opinion.

Justices J. Gordon and Fitzgerald Smith concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs Dolores Stehlik and Jerry Stehlik filed a personal injury lawsuit against defendants Gerald Kelly and the Village of Orland Park, seeking damages for injuries the plaintiffs sustained when their automobile was struck by an Orland Park police squad car driven by police officer Kelly. Following the presentation of plaintiffs' case-in-chief at trial, defendants filed a motion for a directed verdict based on section 2-202 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/2-202 (West 1998)). On April 10, 2009, the trial court granted defendants' motion for directed verdict on all counts and dismissed the action in its entirety, finding that defendants were immune from liability under section 2-202 of the Act because Officer Kelly was engaged in the execution and/or enforcement of the law at the time of the accident, and that no evidence demonstrated Officer Kelly acted willfully or wantonly. Plaintiffs appeal. For the reasons that follow, we affirm the trial court's judgment.

¶ 2                      BACKGROUND

¶ 3    The evidence adduced at trial established that at around 8 p.m. on August 13, 1999, Officer Kelly was involved in an accident with the plaintiffs at the intersection of 143rd Street and Greenland Avenue in the Village of Orland Park.

¶ 4    Officer Kelly testified he was on patrol on August 13 when he heard a dispatch report regarding a traffic altercation at the intersection of 143rd Street and Ravinia Avenue. Officer Kelly was initially assigned the call and began to respond. As he was responding, dispatch advised him that two westbound vehicles had been involved in the altercation–a white Chevrolet minivan and a blue Ford Taurus. The driver of the blue Ford had called dispatch on her cell phone. Officer Glacier had also been dispatched to the scene.

¶ 5    Officer Kelly testified Sergeant Lynch, the duty sergeant, told dispatch to tell the driver of the blue Ford to pull over. Officer Kelly said he heard a third officer, Officer Wegner, inform dispatch over the radio that he had pulled over the white minivan. A fourth officer, Officer Palgen, then informed dispatch that he was going to assist Officer Wegner. At that

time, dispatch advised Officers Kelly and Glacier to disregard the call. Officer Glacier responded to the "disregard call," but Officer Kelly did not. Officer Kelly said he told dispatch that he was going to assist Officer Wegner because he believed Officer Palgen might be heading to the wrong location. Dispatch responded "10-4." Officer Kelly also testified he is authorized to assign himself back to a call.

¶ 6 Officer Kelly said Officer Palgen radioed him and told him he was at the white minivan's location with Officer Wegner. Officer Palgen asked Officer Kelly to go to the blue Ford driver's location, which was four blocks east of Crystal Tree on 143rd Street. Officer Kelly then turned around and went back to the blue Ford's location. Officer Kelly said the blue Ford was stopped close to the curb on westbound 143rd Street, so he stopped in the middle of the eastbound lane and activated his emergency lights. After Officer Kelly approached the vehicle, he told the driver that the white minivan had been stopped a few blocks away on 143rd Street. Officer Kelly asked the driver to go to 143rd Street and Crystal in order to identify the vehicle and the driver as the other party involved in the moving violation. Officer Kelly told the driver he would follow her and meet her there.

¶ 7 Officer Kelly testified that in order to escort the driver of the blue Ford to the location of the white minivan, he had to turn his squad car around to head west on 143rd Street. Although Officer Kelly admitted neither Officer Wegner or Officer Palgen nor dispatch told him to follow the blue Ford, he testified "[i]t's police procedure to do that." With his emergency lights still activated, Officer Kelly drove eastbound on 143rd Street toward Greenland Avenue. When he reached Greenland Avenue, Officer Kelly turned on his left-hand turn signal and then veered to the right with the intention to make a three-point left turn onto westbound 143rd Street. Officer Kelly said he checked his mirrors and felt he had adequate clearance to make a safe turn because the vehicles on 143rd Street still appeared to be stopped. As he was turning left with his emergency lights still activated, plaintiffs' vehicle struck his squad car. Officer Kelly explained he had to make a three-point turn because 143rd Street was not wide enough for him to make a U-turn. Officer Kelly denied telling Officer Secula after the accident that he had made a U-turn.

¶ 8 Orland Park police officer David Palgen testified he contacted Officer Kelly on the radio and asked him to locate the driver of the blue Ford and bring her to the scene of the white minivan to identify the driver and vehicle. Officer Palgen said that with regard to the moving traffic altercation, there was an ongoing investigation as to whether or not a violation had occurred. Officer Palgen testified Officer Kelly eventually told him that he had located the blue Ford, and that he was going to bring the driver to the suspect's location. Officer Palgen said police officers escort complaining witnesses to the location of the offender as part of the process of identifying offenders.

¶ 9 Orland Park police officer Warren Sekula testified he was dispatched to the scene of the accident involving Officer Kelly and the plaintiffs. Officer Sekula said that on the night of the accident, Officer Kelly told him his emergency lights and siren were activated while he attempted to make a U-turn on 143rd Street.

¶ 10 Plaintiff Jerome Stehlik testified he was driving eastbound on 143rd Street when he saw a squad car with its emergency lights activated stop in the middle of the eastbound lane.

Plaintiff watched the officer get out of his car and walk over to a blue Ford Taurus parked in the westbound lane. After the officer returned to his squad car, the blue Ford started to drive west. Plaintiff said the squad car then proceeded to drive eastbound on 143rd at around 20 or 25 miles per hour while its emergency lights were still activated. Plaintiff said westbound traffic remained stopped. Plaintiff testified he was around two car lengths behind the squad car while keeping pace with it. Plaintiff said that as the squad car approached Greenland Avenue, it started to turn right and plaintiffs continued to proceed eastbound. According to plaintiff, the squad car then immediately turned in front of the plaintiffs' car and the two vehicles collided. Plaintiff testified the squad car struck his vehicle. Photographic evidence presented at trial, however, showed the front of plaintiffs' vehicle was damaged and the driver's side door of the squad car was damaged. When asked what his understanding of what a driver was suppose to do when a police vehicle has it lights activated in the area was, plaintiff said "if it's moving, you pull over on the side." When asked if he stayed pulled over to the side when the squad car began moving again with its lights still activated, plaintiff responded no. Dolores Stehlik's trial testimony regarding the circumstances of the accident was substantially similar to her husband's.

¶ 11        Dennis Waller, plaintiffs' expert witness, admitted Officer Kelly was engaged in the execution and enforcement of the law while instructing the driver of the blue Ford to proceed to the location of the white minivan to identify the other driver and vehicle because he was assisting another officer. Waller opined, however, that Officer Kelly was no longer engaged in the execution and enforcement of the law once he completed his instructions to the driver. Waller also testified that even if Officer Palgen had expected Officer Kelly to accompany the driver to the white minivan's location, Officer Kelly would not have been engaged in the execution and enforcement of the law. Waller explained that in his opinion, an "unsaid expectation doesn't put that into the category of executing or carrying out a law, putting a law into effect." When asked whether Officer Kelly's intention to follow the driver to the scene of the traffic stop to ensure she arrived there would constitute execution and enforcement of the law, Waller responded "[n]o" because there would be "no rational law enforcement basis for doing that." Waller admitted, however, that Officer Kelly would have been engaged in the execution and enforcement of the law if he led the driver to the traffic stop location. Waller agreed that Officer Kelly had the ability to assign himself or volunteer to respond to the call and that an officer is still executing or enforcing the law when he self-assigns or volunteers for a call.

¶ 12        Following the close of plaintiffs' case-in-chief, defendants moved for a directed verdict. In their motion, defendants argued the evidence presented at trial, even when viewed in the light most favorable to the plaintiffs, demonstrated Officer Kelly was engaged in the execution and enforcement of the law when the accident occurred. Defendants also argued no evidence supported plaintiffs' allegation that Officer Kelly's conduct amounted to wilful and wanton conduct.

¶ 13        Following a hearing, the trial court granted the motion for a directed verdict on all counts. In granting the motion, the trial court found plaintiffs' expert witness lacked sufficient foundation for his opinion that Officer Kelly was not engaged in the execution and enforcement of the law when the accident occurred. The trial court also found Officer Kelly's

-4-

decision to follow the complaining witness to the scene of the traffic stop in order to conduct a "show up" identification was "undeniably logical and consistent with enforcement circumstances." The court noted that given the circumstances of the case, Officer Kelly's "course of conduct, all the way up to the time of the accident, was reasonably related to enforcement of a law." With regard to the wilful and wanton conduct allegation, the court noted the evidence reflected that Officer Kelly was traveling at a speed below 20 miles per hour, Officer Kelly was unaware of the presence of plaintiffs' vehicle behind him, westbound traffic was still stopped and Officer Kelly's emergency lights were activated at all relevant times. The court found there simply were "not any facts which are compelling enough to allow a trier of fact to conclude that the officer's driving showed utter indifference." Plaintiffs appeal.

¶ 14                                    ANALYSIS

¶ 15        A directed verdict is appropriate where all of the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary ruling based on the evidence could ever stand. *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992). In ruling on a motion for a directed verdict, the trial court can neither weigh the evidence nor judge the credibility of the witnesses. *Maple*, 151 Ill. 2d at 452. A directed verdict is improper when "there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome." *Maple*, 151 Ill. 2d at 454. We review a trial court's grant of a motion for directed verdict *de novo*. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 225 (2010).

¶ 16                    I. Execution and Enforcement of the Law

¶ 17        Plaintiffs contend the trial court erred in entering a directed verdict because there is a genuine issue of material fact as to whether Officer Kelly was engaged in the execution or enforcement of the law when the collision occurred.

¶ 18        Section 2-202 of the Act provides: "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 1998). Section 2-109 of the Act also provides: "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 1998).

¶ 19        Immunity under section 2-202 does not extend to all of a police officer's activities while on duty but, instead, only to acts or omissions while in the actual enforcement or execution of a law. *Aikens v. Morris*, 145 Ill. 2d 273, 278 (1991); *Arnolt v. City of Highland Park*, 52 Ill. 2d 27, 33 (1972). The words "in execution or enforcement of any laws" must be given their "plain and commonly ascribed meaning." (Internal quotation marks omitted.) *Thompson v. City of Chicago*, 108 Ill. 2d 429, 433 (1985). The question of whether a police officer was executing and enforcing the law is generally a factual determination that must be made in light of the circumstances involved in each case. *Arnolt*, 52 Ill. 2d at 35. Where the evidence is undisputed or susceptible to only one possible interpretation, however, the question may

-5-

be decided as a matter of law. *Simpson v. City of Chicago*, 233 Ill. App. 3d 791, 792 (1992).

¶ 20 Whether an activity can be deemed to constitute executing or enforcing the law is determined on a case-by-case basis. *Hudson v. City of Chicago*, 378 Ill. App. 3d 373, 388 (2007). Our supreme court has noted "[e]nforcing the law is rarely a single, discrete act, but is instead a course of conduct." *Thompson*, 108 Ill. 2d at 433. Therefore, where the evidence establishes a police officer was engaged "in a course of conduct designed to carry out or put into effect any law" at the time his alleged negligence occurred, sections 2-202 and 2-109 of the Act provide an affirmative defense to the officer and his employer. *Fitzpatrick v. City of Chicago*, 112 Ill. 2d 211, 221 (1986).

¶ 21 In *Fitzpatrick*, our supreme court held investigating a traffic accident constituted an execution or enforcement of the law. *Fitzpatrick*, 112 Ill. 2d at 221. In that case, the police officer responded to the scene of a minor automobile accident. While the plaintiff and the police officer were examining the damage to one of the cars, a vehicle driven by a third party struck the officer's parked car, causing it to strike the plaintiff. In determining whether the defendants were entitled to a directed verdict, the supreme court held that even when viewing the evidence in a light most favorable to the plaintiff, it was clear the police officer, who had observed and responded to the traffic accident, was in the process of executing or enforcing the applicable traffic laws at the time the plaintiff's injury occurred. *Fitzpatrick*, 112 Ill. 2d at 222.

¶ 22 Similarly, in *Morris v. City of Chicago*, 130 Ill. App. 3d 740 (1985), this court found an officer who was responding to a radio report of a crime in progress was executing or enforcing the law. The plaintiff brought suit against the city and the police officer for injuries he sustained when his parked car was struck by the officer's squad car. *Morris*, 130 Ill. App. 3d at 741. The court held immunity applied because, at the time of the accident, there was an "unbroken effort" on the officer's part to respond to the call. *Morris*, 130 Ill. App. 3d at 744.

¶ 23 However, several cases have recognized ordinary or routine police activities do not qualify as enforcement or execution of the law under section 2-202 of the Act. See *Hudson*, 378 Ill. App. 3d at 390. In *Aikens*, our supreme court held that the transportation of prisoners did not constitute the type of execution or enforcement of the law that would immunize either the city or its officer from the plaintiff's claims. *Aikens*, 145 Ill. 2d at 286. The court noted the police officer's conduct "was not shaped or affected in any manner by the nature of duties in either enforcing or executing the law." *Aikens*, 145 Ill. 2d at 286.

¶ 24 In *Simpson v. City of Chicago*, 233 Ill. App. 3d 791 (1992), a police officer struck and seriously injured a 10-year-old girl riding a bicycle. The defendants claimed immunity under section 2-202, contending the police officer was enforcing the law at the time of the accident because he was on his way to an address where someone had reported a missing person. The appellate court reversed the trial court's grant of summary judgment in defendants' favor, noting the police officer "did not consider the call an emergency where there was no indication that any crime had been committed or that any law required execution or enforcement." *Simpson*, 233 Ill. App. 3d at 793. In rejecting defendants' contention that filling out a missing persons report constituted executing the law, the court recognized that

although the police officer's "activities were governed by some legal requirement[, it was] insufficient to raise [those activities] to the level of executing or enforcing the law." *Simpson*, 233 Ill. App. 3d at 793.

¶ 25    In *Hudson*, a police officer's squad car struck the plaintiff's vehicle on an expressway during a high-speed pursuit of a suspect. The defendant police officer testified she heard about a pursuit of a suspect over her radio and entered the expressway to render "assistance" in the pursuit, not to participate in the pursuit itself. The officer testified "assistance" could include something "as little as traffic control" or providing assistance if the suspect fled on foot or took a hostage. Following a jury verdict in the plaintiff's favor, the defendants moved for a judgment notwithstanding the verdict based on section 2-202 of the Act.

¶ 26    This court recognized that if the officer had been providing traffic control or was on her way to provide traffic control at the time the accident occurred, section 2-202 would apply. *Hudson*, 378 Ill. App. 3d at 391-92. The court noted immunity would also apply if the pursuit had ended and the pursuing officers had requested backup, or if the defendant officer had been assigned to the pursuit itself. *Hudson*, 378 Ill. App. 3d at 392. The court held that under the evidence presented, however, the jury was free to conclude none of those scenarios had occurred. The court recognized "[t]he mere fact that a police officer acts on the speculation that she may be required to enforce some, as yet, undetermined law is not enough to activate the immunity set forth in section 2-202." *Hudson*, 378 Ill. App. 3d at 392-93. The court held that despite the officer's explanations to the contrary, the jury may have properly found that the officer was not on the expressway to enforce the law, but, instead, was "merely following the pursuit out of personal interest in the outcome or some unofficial camaraderie with her fellow officers who were leading the pursuit." *Hudson*, 378 Ill. App. 3d at 393.

¶ 27    Likewise, in *Sanders v. City of Chicago*, 306 Ill. App. 3d 356 (1999), a police officer heard an emergency call that another officer had been attacked. Shortly after the police officer proceeded to respond to the area in his squad car, the police dispatcher confirmed over the radio that the original officers involved did not need further backup. *Sanders*, 306 Ill. App. 3d at 359. About one minute after the dispatcher's call, the defendant police officer's car struck and killed a child crossing the street. This court found the defendants were not entitled to summary judgment on the basis of section 2-202 immunity, holding a jury could find that the emergency was over at the time the accident occurred and that the officer "was merely cruising around in his car"–an activity not subjected to immunity. *Sanders*, 306 Ill. App. 3d at 361. See also *Leaks v. City of Chicago*, 238 Ill. App. 3d 12, 17-18 (1992) ("At best, [the officer's] testimony was conclusory in nature as to suspected violation of state law or municipal ordinance.").

¶ 28    In this case, plaintiffs' expert conceded at trial that Officer Kelly was engaged in the enforcement and execution of the law when he pulled over to talk with the driver of the blue Ford. Plaintiffs contend, however, that the evidence supports a reasonable inference that Officer Kelly's engagement in the enforcement or execution of the law ended once he instructed the driver of the blue Ford to drive to the location of the white minivan in order to participate in a "showup" identification.

¶ 29    Based on the evidence presented in this case, we agree with the trial court's ultimate

-7-

determination that the evidence reflected Officer Kelly's decision to follow the complaining witness to the "showup" identification was "undeniably logical and consistent with enforcement circumstances." Even when viewing the evidence in a light most favorable to the plaintiffs, it is clear Officer Kelly–who was asked by another officer to respond to the location of the blue Ford to investigate a suspected traffic altercation and to request that the driver participate in a "showup" identification–was still in the process of executing or enforcing the law at the time plaintiffs' injuries occurred. Although we recognize plaintiffs' expert opined that Officer Kelly had "no rational law enforcement basis" for deciding to follow the driver to the scene of the showup, we find the trial court properly determined the expert failed to provide a sufficient foundation for that opinion. As the trial court noted below, plaintiffs' expert offered no specifics regarding his firsthand experience with showup procedures; much less with ones comparable to the facts presented here. "[A]n expert's opinion lacks probative value unless it is accompanied by foundation evidence establishing a witness' expertise or experience to form such an opinion." *Harmon v. Patel*, 247 Ill. App. 3d 32, 37-38 (1993) (citing *Johnson v. Equipment Specialists, Inc.,* 58 Ill. App. 3d 133 (1978)).

¶ 30 Moreover, we note our supreme court has consistently recognized "[e]nforcing the law is rarely a single, discrete act, but is instead a course of conduct." *Thompson*, 108 Ill. 2d at 433. As plaintiffs' expert conceded, there is no doubt Officer Kelly was enforcing the law when he responded to the dispatcher's call and was directed by another officer to inform the driver of the blue Ford to go to the scene of the white minivan in order to participate in a showup identification. Even when viewed in the light most favorable to plaintiffs, the evidence indicates Officer Kelly's decision to follow the driver to the showup identification–which both Officer Kelly and Officer Palgen testified was a matter of routine police procedure–was still related to his ongoing course of conduct in investigating the traffic altercation. Accordingly, we find the only reasonable inference possible here is that Officer Kelly's course of conduct, from the time he initially responded all the way up to the time when the accident occurred, was reasonably related to the enforcement or execution of the law. See *Fitzpatrick*, 112 Ill. 2d at 222; *Thompson*, 108 Ill. 2d at 433.

¶ 31                                II. Wilful and Wanton Conduct

¶ 32 Plaintiffs also contend the trial court erred in determining Officer Kelly's conduct could not reasonably be considered wilful and wanton. Specifically, plaintiffs contend Officer Kelly's decision to execute an allegedly illegal U-turn at the intersection of 143rd and Greenland showed an utter indifference to or conscious disregard for the safety of others.

¶ 33 Wilful and wanton conduct is defined in section 1-210 of the Act as:

"a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property. This definition shall apply in any case where a 'willful and wanton' exception is incorporated into any immunity under this Act." 745 ILCS 10/1-210 (West 1998).

¶ 34 While the question of whether conduct is wilful and wanton is ultimately a question of

fact for the jury (*Suwanski* v. *Village of Lombard*, 342 Ill. App. 3d 248, 256-57 (2003)), it may be determined by the trial court as a matter of law as part of a directed verdict when all of the evidence, when viewed in the light most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary ruling based on the evidence could ever stand (*Urban v. Village of Lincolnshire*, 272 Ill. App. 3d 1087, 1094-95 (1995)).

¶ 35    Although plaintiffs contend Officer Kelly's actions could be inferred as wilfully and wantonly negligent based on the fact that he made an illegal U-turn in a nonemergency situation, we find there is simply no evidence to support a reasonable inference that Officer Kelly's actions rose to the level of wilful and wanton conduct. Both Officer Kelly and the plaintiffs testified the officer was traveling at a speed below 20 miles per hour with his emergency lights already activated prior to initiating the turn. The evidence also indicates that traffic was already stopped in the opposite direction on 143rd Street, and that Officer Kelly was not aware plaintiffs' vehicle was following closely behind him when he activated his left-hand turn signal and started to make the turn. Moreover, plaintiff Jerry Stehlik testified that he was aware the officer's emergency lights were still activated and that he was aware "you pull over on the side" if a squad car is moving with its emergency lights activated. Stehlik admitted, however, that he started to follow and keep pace with the officer's squad car as soon as the officer pulled away from the side of the road with his emergency lights still activated.

¶ 36    Even viewing the evidence in the light most favorable to the plaintiffs, we cannot say a reasonable person could infer that Officer Kelly's actions exhibited an utter indifference to or conscious disregard for the safety of the plaintiffs. See *Urban*, 272 Ill. App. 3d at 1096. Accordingly, we find a directed verdict in defendants' favor on the issue was proper.

¶ 37                                CONCLUSION

¶ 38    We affirm the trial court's order.


¶ 39    Affirmed.