# Illinois Official Reports

## Appellate Court

---

### *Betts v. City of Chicago*, 2013 IL App (1st) 123653

---

| | |
|---|---|
| Appellate Court Caption | DOMINIQUE BETTS, Plaintiff-Appellant, v. THE CITY OF CHICAGO, a Municipal Corporation, and DARRELL SMITH, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-3653 |
| Filed | November 22, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries plaintiff suffered when defendant police officer struck plaintiff's vehicle while backing up his patrol car as he moved to continue his narcotics surveillance operation, the trial court erred in dismissing plaintiff's complaint on the ground that the officer was immune from liability under the Tort Immunity Act, since the record, including an affidavit provided by the officer, lacked sufficient facts to support the officer's claim that he was engaged in the execution or enforcement of the law at the time of the accident and plaintiff was entitled to additional discovery to determine whether the Tort Immunity Act applied; therefore, the dismissal was reversed, the complaint was reinstated, and the cause was remanded for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-M1-303194; the Hon. James E. Snyder, Judge, presiding. |
| Judgment | Reversed and remanded. |
| | Joseph L. Dombrowski, of Dombrowski & Sorenson, of Chicago, for |

Counsel on Appeal appellant.

Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Julian N. Henriques, Jr., Assistant Corporation Counsel, of counsel), for appellees.

Panel        JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Palmer and Taylor concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiff Dominique Betts appeals the trial court's order dismissing her complaint filed against defendants, the City of Chicago and Darrell Smith, alleging negligence in a car accident in which Smith, a Chicago police officer, backed into plaintiff's vehicle and caused injury to plaintiff. On appeal, Betts argues that the trial court erred in dismissing her complaint because the record does not support defendants' assertion of immunity under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2010)) and she was denied her right to discovery and due process.

¶ 2        In December 2011, plaintiff filed her negligence complaint against defendants. The complaint alleged that on or about December 4, 2010, plaintiff was operating a motor vehicle that was parked facing east on Congress, at or near its intersection with Kostner, in Chicago. Smith "was operating a motor vehicle in an easterly direction on the aforesaid Congress and backed into the Plaintiff's vehicle." At the time of the accident, Smith was operating the vehicle as an agent, servant and employee of the City of Chicago. Plaintiff alleged that defendants had a duty to exercise ordinary care in the operation of the vehicle to avoid injury to plaintiff. As a direct and proximate result of defendants' negligence, plaintiff was injured and suffered damages of a personal and pecuniary nature. Plaintiff sought damages not in excess of $9,950, plus the costs of the suit.

¶ 3        In February 2012, defendants filed a motion to dismiss the complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2010)). The motion was set for hearing on March 13, 2012, but when plaintiff's attorney did not appear at a March 6 status hearing, the trial court dismissed the case for want of prosecution. Plaintiff subsequently filed a motion to vacate the dismissal, which the trial court granted.

¶ 4        In April 2012, defendants renoticed their motion to dismiss the complaint. The motion asserted that defendants were immune from the alleged negligence under sections 2-202 and 2-109 of the Tort Immunity Act (745 ILCS 10/2-202, 2-109 (West 2010)). Section 2-202

provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2010). Section 2-109 states that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2010). According to defendants, Smith was executing the law at the time of the accident because he was an on duty police officer assisting with a narcotics surveillance. If Smith was not liable, then the city cannot be liable. Defendants attached an affidavit from Smith to the motion. In the affidavit, Smith stated:

"1. I have personal knowledge of the facts contained in this affidavit.

2. At the time of the accident in question on December 4, 2010, I was on duty with the City of Chicago Police Department, acting within the scope of my duties as a City of Chicago police officer.

3. At the time of the accident, I was on duty as an undercover surveillance officer in a narcotics transaction.

4. If sworn to testify, I would testify as above."

¶ 5     The motion was set for a hearing on July 10, 2012. The trial court allowed plaintiff to propound five interrogatories on the question of whether the officer was within the "scope of duties." Defendants filed their answers to plaintiff's interrogatories on June 7, 2012.

¶ 6     Plaintiff filed a response to the motion to dismiss, contending that at the time of the accident, Smith "had not yet begun to execute or enforce any law but was merely on his way to take over for the team engaged in the investigation" and, thus, defendants were not entitled to immunity under the Tort Immunity Act. Defendants filed a reply, maintaining that Smith was acting in a course of conduct aimed at enforcing drug laws.

¶ 7     On July 10, 2012, the trial court granted defendants' motion to dismiss. On July 25, 2012, plaintiff filed a motion to vacate the *ex parte* order of July 10, 2010 and for rehearing. According to the motion, plaintiff's attorney did not appear at the hearing on July 10 because his diary clerk incorrectly recorded the date of the hearing. In August 2012, the trial court vacated the dismissal order and defendants' motion to dismiss was rescheduled. On September 25, 2012, the trial court denied defendants' motion and gave defendants 14 days to correct defects in the answer to interrogatories and plaintiff was given leave to amend her complaint within 28 days.

¶ 8     On October 2, 2012, defendants filed the corrected answers to interrogatories. The answers are substantially the same, except the answers were now drafted in the first-person for Officer Smith and the certification was corrected to name Smith. The corrected interrogatories and answers provided the following:

"1. Describe in detail the police action you were taking on December 4, 2010 when you placed your automobile in reverse at approximately 1:00 p.m. and collided with Plaintiff Dominique Betts' vehicle.

I was conducting surveillance pursuant to a narcotics investigation. Our team was following the target northbound on Kostner and I was preparing to do a 'take-away', moving out of my parking spot to turn northbound onto Kostner and take over for the

surveillance team. I had been waiting for approximately ten minutes and received a communication from the Nextel Direct Connect system to take over the surveillance. As I left my parking spot on Congress Parkway, I backed into plaintiff's vehicle.

We had identified the target from previous undercover drug buys from the target or his associates. The target was part of a group that was under investigation for distributing narcotics.

2. Identify your destination by name and address had the collision with Plaintiff Dominique Betts' vehicle not occurred.

I was on my way to take over surveillance by following the target, meeting up with my team by turning northbound onto Kostner. In my experience, the time period spent following a target varies and can last as long as several hours.

3. Describe by RD number and name of defendant any arrests made as a result of surveillance allegedly undertaken immediately before your collision with Plaintiff Dominique Betts' vehicle.

The RD number for this investigation is HS 645892. The RD number was marked confidential, meaning that the investigation was still ongoing at the time of the accident.

4. Describe all items of food in Defendant's vehicle at the time of the collision with Plaintiff Dominique Betts' vehicle.

I do not recall having any items of food inside my vehicle at the time of the collision.

5. Describe any reprimands received by Officer Darrell Smith as a result of the occurrence with Plaintiff Dominique Betts' vehicle and state and describe the general order Defendant Darrell Smith was to follow before placing his automobile in reverse on December 4, 2010.

I did not receive any official reprimand. Because this was my only accident that year, I only received a verbal warning from Sergeant Mostek, Star #1058.

My assignment for the day was to act as part of a surveillance team for the group of targets suspected of distributing narcotics in the vicinity of Kostner and Fifth Avenue. The plan was to observe the target in order to ascertain where he was purchasing narcotics from and to use that information in preparation for a planned uncover [*sic*] drug buy from the target, meant to take place later that day."

¶ 9 Also in October 2012, defendants filed a motion to dismiss plaintiff's complaint. This motion stated that it was pursuant to section 2-615(d) of the Code of Civil Procedure (735 ILCS 5/2-615(d) (West 2010)), but made the same arguments as the previous motions to dismiss. On November 14, 2012, the trial court entered an order granting plaintiff's motion and dismissing plaintiff's complaint with prejudice.

¶ 10 This appeal followed.

¶ 11 Plaintiff argues that the trial court erred in granting defendants' motion and dismissing the complaint with prejudice because the record does not support defendants' claims for immunity under the Tort Immunity Act.

- 4 -

¶ 12    First, we note that defendants' motion stated that it was brought pursuant to section 2-615, which "challenges only the legal sufficiency of a complaint and alleges only defects on the face of the complaint." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 54. "A motion to dismiss based on the immunity conferred by the Act, however, is more appropriately raised in a section 2-619(a)(9) motion, which allows for dismissal when the claim asserted against the defendant is 'barred by other affirmative matter avoiding the legal effect of or defeating the claim' (735 ILCS 5/2-619(a)(9) (West 2008))." *Id.* We point out that defendants' previous motions to dismiss had been filed under section 2-619(a)(9) and the motion at issue made the same substantive arguments as the previous motions. Since the substance of the motion, rather than the label, determines what the motion is, we will consider defendants' motion to dismiss under section 2-619(a)(9). See *id.*; *Loman v. Freeman*, 375 Ill. App. 3d 445, 448 (2006).

¶ 13    When ruling on the motion to dismiss, the trial court "should construe the pleadings and supporting documents in the light most favorable to the nonmoving party" and "accept as true all well-pleaded facts in plaintiff's complaint and all inferences that may reasonably be drawn in plaintiff's favor." *Sandholm*, 2012 IL 111443, ¶ 55. "The question on appeal is 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Id.* (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993)). We review the section 2-619 dismissal of a complaint *de novo*. *Sandholm*, 2012 IL 111443, ¶ 55.

¶ 14    A motion for involuntary dismissal pursuant to section 2-619(a) admits the legal sufficiency of the complaint, but raises defects, defenses, or other affirmative matter which avoids the legal effect or defeats a plaintiff's claim. 735 ILCS 5/2-619(a) (West 2010). An "affirmative matter" under section 2-619(a)(9) is "something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *In re Estate of Schlenker*, 209 Ill. 2d 456, 461 (2004). "Once a defendant satisfies the initial burden of presenting affirmative matter, the burden then shifts to the plaintiff to establish that the defense is 'unfounded or requires the resolution of an essential element of material fact before it is proven.' " *Reilly v. Wyeth*, 377 Ill. App. 3d 20, 36 (2007) (quoting *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116).

¶ 15    Affidavits in support of motions to dismiss under section 2-619 are controlled by Illinois Supreme Court Rule 191 (eff. July 1, 2002). Rule 191(a) provides that affidavits submitted in connection with a motion for involuntary dismissal "shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a) (eff. July 1, 2002).

¶ 16    Plaintiff argues that the record does not support the order dismissing her case because answers to the interrogatories and Smith's affidavit did not clearly establish that Smith was executing or enforcing the law at the time of the accident, as required under section 2-202 of

the Tort Immunity Act. Plaintiff also contends that she should have been allowed to conduct a limited deposition of Smith to more fully detail the circumstances at the time of accident.

¶ 17     As we previously noted, section 2-202 provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct" (745 ILCS 10/2-202 (West 2010)) and section 2-109 states that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable" (745 ILCS 10/2-109 (West 2010)). Betts' complaint does not include any allegations of willful and wanton conduct; therefore, our review is limited to whether defendants are immune for their alleged negligent conduct.

¶ 18     Illinois courts have held that the Tort Immunity Act " 'is in derogation of the common law action against local public entities, and must be strictly construed against the public entity involved.' " *Hudson v. City of Chicago*, 378 Ill. App. 3d 373, 388 (2007) (quoting *Aikens v. Morris*, 145 Ill. 2d 273, 278 (1991)). "The immunity provided by section 2-202 does not extend to all activities of police officers while on duty, but only to acts or omissions while in the actual execution or enforcement of a law." *Id.* "The question of whether a police officer is executing and enforcing the law is a factual determination which must be made in light of the circumstances involved in each case." *Id.* "The words 'in execution or enforcement of any laws' must be given their 'plain and commonly ascribed meaning.' " *Stehlik v. Village of Orland Park*, 2012 IL App (1st) 091278, ¶ 19 (quoting *Thompson v. City of Chicago*, 108 Ill. 2d 429, 433 (1985)). "However, where the evidence is undisputed or susceptible to only one possible interpretation, the question may be decided as a matter of law." *Hudson*, 378 Ill. App. 3d at 388.

¶ 19     The supreme court has found that "[e]nforcing the law is rarely a single, discrete act, but is instead a course of conduct." *Thompson*, 108 Ill. 2d at 433. "Therefore, where the evidence establishes a police officer was engaged 'in a course of conduct designed to carry out or put into effect any law' at the time his alleged negligence occurred, sections 2-202 and 2-109 of the Act provide an affirmative defense to the officer and his employer." *Stehlik*, 2012 IL App (1st) 091278, ¶ 20 (quoting *Fitzpatrick v. City of Chicago*, 112 Ill. 2d 211, 221 (1986)). "[V]irtually every police function or duty is pursuant to some legal authorization in the broadest sense. [Citation.] Arguably, then the performance of any task while on duty is in enforcement or execution of the law. We do not believe, however, as we have previously stated, that the legislature intended such a result." *Aikens v. Morris*, 145 Ill. 2d 273, 285 (1991).

¶ 20     Illinois courts have explored whether an officer was executing or enforcing the law, as required for immunity under section 2-202. These courts have concluded that the officer in question was immune when he was investigating a traffic accident (see *Fitzpatrick v. City of Chicago*, 112 Ill. 2d 211, 221 (1986)), responding to a radio report of a crime in progress (see *Morris v. City of Chicago*, 130 Ill. App. 3d 740, 744 (1985)), responding to a call of shots fired (see *Bruecks v. County of Lake*, 276 Ill. App. 3d 567, 569 (1995)), responding to a reported burglary alarm (see *Bosen v. City of Collinsville*, 166 Ill. App. 3d 848, 849 (1987)), and escorting a witness to a "showup" identification (see *Stehlik*, 2012 IL App (1st) 091278, ¶ 29).

¶ 21     In contrast, Illinois courts have declined to find that an officer was executing or enforcing the law when transporting prisoners (see *Aikens*, 145 Ill. 2d at 286), responding to a call for a

missing person (see *Simpson v. City of Chicago*, 233 Ill. App. 3d 791, 792-93 (1992)), investigating a crowd for suspected criminal activity (see *Leaks v. City of Chicago*, 238 Ill. App. 3d 12, 17-18 (1992)), responding to a radio call after the police dispatcher confirmed that additional backup was not needed (see *Sanders v. City of Chicago*, 306 Ill. App. 3d 356, 361-62 (1999)), and attempting to offer unrequested assistance to a high-speed pursuit (see *Hudson*, 378 Ill. App. 3d at 392-93).

¶ 22    In *Simpson*, the police officer struck and injured a child while responding to a call about a missing person. The trial court granted summary judgment after finding that immunity applied. However, the reviewing court reversed, pointing out that the officer "did not consider the call an emergency and there was no indication that any crime had been committed or that any law required execution or enforcement." *Simpson*, 233 Ill. App. 3d at 793. The court concluded that "it is apparent that the fact that [the officer's] activities were governed by some legal requirement is insufficient to raise them to the level of executing or enforcing the law." *Simpson*, 233 Ill. App. 3d at 793.

¶ 23    In *Leaks*, the officer was on patrol when he encountered a large crowd and suspected they might be engaged in narcotics transactions. When he backed up to investigate, he struck the plaintiffs' vehicle. The trial court concluded that the officer was engaged in the enforcement of the law at the time of the accident and that the plaintiffs could only recover if the jury found the officer's condut to be willful and wanton. The jury found in favor of the defendants. *Leaks*, 238 Ill. App. 3d at 14-15. On appeal, the reviewing court disagreed with the trial court's determination that the officer was enforcing the law at the time of the accident. "It is undisputed that [the officer] was not engaged in the execution or enforcement of a law while he was routinely cruising the neighborhood." *Leaks*, 238 Ill. App. 3d at 17. The court found that there was "absolutely no indication that [the officer] observed the exchange of any money or the transfer of any drugs, or for that matter any crime at all." *Leaks*, 238 Ill. App. 3d at 17. The reviewing court remanded for a trial on the negligence count. *Leaks*, 238 Ill. App. 3d at 18.

> "Our holding, we stress, is not intended to establish a rule that facts establishing that an actual crime or violation of law was taking place must be shown to prevail upon the affirmative defense, or that investigatory procedure may never bring police personnel within the ambit of section 2-202. Rather, our holding is bottomed upon defendants' failure to support their affirmative defense with facts. At best, [the officer's] testimony was conclusory in nature as to suspected violation of state law or municipal ordinance." *Leaks*, 238 Ill. App. 3d at 17-18.

¶ 24    Here, the only evidence on the question of whether Smith was actually executing or enforcing the law at the time of the accident is the answers to the interrogatories and Smith's affidavit. We point out that Smith's affidavit partially consists of conclusions that he was acting within the scope of his duties as a police officer as part of an undercover surveillance narcotics investigation. The affidavit contains no additional facts. To the extent that the statements in the affidavit violate Rule 191(a), we will disregard any inadmissible conclusory statements.

¶ 25    In comparison to the instant case, the cases referenced above were decided either at trial, after a jury verdict (see *Hudson*, 378 Ill. App. 3d at 386; *Fitzpatrick*, 112 Ill. 2d at 215; *Aikens*,

145 Ill. 2d at 275), a bench trial (see *Bosen*, 166 Ill. App. 3d 848), or a directed verdict (see *Stehlik*, 2012 IL App (1st) 091278, ¶ 12; *Leaks*, 238 Ill. App. 3d at 15; *Morris*, 130 Ill. App. 3d at 742), or on a motion for summary judgment after depositions had been taken (see *Simpson*, 233 Ill. App. 3d at 792; *Bruecks*, 276 Ill. App. 3d at 568; *Sanders*, 306 Ill. App. 3d at 359). None of the cases were determined based on the evidence provided from the answers to interrogatories and an affidavit.

¶ 26       In the interrogatories, Smith stated that on the day of the accident he was "to act as part of a surveillance team for the group of targets suspected of distributing narcotics in the vicinity of Kostner and Fifth Avenue." Smith explained that "[t]he plan was to observe the target in order to ascertain where he was purchasing narcotics from and to use that information" for a future undercover drug buy from the target. He had received a call to take over for the surveillance team on Kostner and follow the target. Smith said that the target had been identified from previous undercover drug buys "from the target or his associates" and the target was under investigation for distributing narcotics.

¶ 27       Smith's answers do not contain any details about any observations made by Smith or other members of the surveillance team regarding the target, his associates or any narcotics activity. There is no information as to whether Smith or the other members of the surveillance team had actually observed the commission of a crime on that date or whether they were following the target in hopes to see him engage in a narcotics transaction. Nor do we know where on Kostner the surveillance team was when Smith was to join the team. The interrogatories generally state that the team was traveling northbound. Similar to the situation in *Leaks*, defendants have not set forth enough facts to make a determination as to whether immunity is applicable. There does not appear to have been an immediate emergency, but the officers' plan was to follow the target to gather information for a future drug purchase and arrest. The record does not disclose any details about the investigation and Smith's involvement. At the time of the accident, he was waiting in a parked vehicle for a call to participate in the surveillance and upon backing out of the parking space, he struck plaintiff's parked vehicle.

¶ 28       Plaintiff asserts in her brief that she requested the opportunity to conduct a limited deposition of Smith, but the trial court denied her request and instead allowed the submission of five interrogatories. Defendants do not contest that this request was made. We believe that a limited deposition could disclose the circumstances of Smith's surveillance beyond the conclusory statements in his interrogatories. We do not reach the ultimate question that surveillance does not qualify as executing or enforcing the law. Rather, on the record before us, we cannot make that determination at this stage and additional discovery would be helpful to develop the facts of this case.

¶ 29       After viewing this evidence in the light most favorable to plaintiff, Smith's account of his conduct does not provide sufficient detail and is susceptible to more than one interpretation as to whether he was actually executing or enforcing a law at the time of the accident. Because the interrogatories consist mostly of legal conclusions and lack sufficient facts, the dismissal was not appropriate at this stage. Since section 2-202 only applies to acts or omissions that occur while in the execution or enforcement of a law (745 ILCS 10/2-202 (West 2010)), we conclude that the dismissal of plaintiff's complaint was premature at this point in the case and plaintiff

should be given the opportunity for additional discovery to determine whether section 2-202 is applicable. Therefore, we reverse the trial court's order dismissing the complaint with prejudice and reinstate plaintiff's complaint.

¶ 30　　　　Since we have reversed the dismissal order, we need not reach plaintiff's additional claims raised on appeal.

¶ 31　　　　Based on the foregoing reasons, we reverse the decision of the circuit court of Cook County and remand for further proceedings.

¶ 32　　　　Reversed and remanded.