2024 IL App (4th) 240629

NO. 4-24-0629

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 17, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Brown County |
| JAMES E. MARTIN, | ) | No. 19CF13 |
| Defendant | ) | |
| | ) | Honorable |
| (Ralph Roberts, Appellant). | ) | Jerry J. Hooker, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Knecht and DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, James E. Martin, pleaded guilty to violating the Timber Buyers

Licensing Act (225 ILCS 735/1 *et seq.* (West 2018)) and was ordered to pay restitution to the

victim, Ralph Roberts. Defendant failed to comply with the payment order, and Roberts

subsequently filed a "Motion to Hold Defendant in Contempt." The trial court struck Roberts's

pleading on the basis that he lacked standing to initiate contempt proceedings in defendant's

underlying criminal case.

¶ 2        Roberts appeals the trial court's judgment striking his pleading. On appeal,

Roberts argues the court erred in ruling he lacked standing to initiate contempt proceedings in

defendant's criminal case.

¶ 3                                    I. BACKGROUND

¶ 4        On October 28, 2019, defendant pleaded guilty to two counts of violating the Timber Buyers Licensing Act (*id.* §§ 5(e), 9a). The trial court sentenced him to 12 months of conditional discharge and ordered him to pay restitution to Roberts in the amount of $13,241.12. The payment order required defendant to make a minimum monthly payment of $100.

¶ 5        On January 31, 2023, Roberts, through privately-retained counsel, filed a "Motion to Hold Defendant in Contempt." Roberts alleged that defendant had not made a payment since September 8, 2020, and was delinquent on a total of 28 payments. Roberts requested that the trial court "enter an appropriate sanction for contempt *** includ[ing] incarceration with work release until [Roberts] is paid in full." The State filed a "Motion to Strike" Roberts's pleading, arguing Roberts's counsel had "no standing to bring this action in the criminal case as neither he nor Ralph Roberts *** are parties in the criminal action with the exception that Ralph Roberts was the victim of the criminal action which formed the basis of the instant matter."

¶ 6        On March 15, 2023, the trial court conducted a hearing on the State's motion to strike. The State argued that Roberts "can file an action in a civil case and ask to have that judgment enforced in a civil case but the criminal case is not a proper venue." The court agreed with the State and granted its motion to strike, providing the following reasoning in open court:

> "THE COURT: This Court has the authority to order the defendant to pay and if the defendant is found to be in contempt, he'll be sitting in jail until he does. You won't get a jail sentence necessarily on your civil side. So the Court feels comfortable that it will get [defendant] back into court and we'll handle this case under the criminal case under the auspices of the State's Attorney, not a private attorney using a criminal case to do that."

¶ 7 Roberts filed a motion to reconsider. On March 13, 2024, the trial court conducted a hearing on Roberts's motion. At the hearing, the State asserted that "[n]owhere in the restitution statute does the legislature grant a judgment creditor like Mr. Roberts, who definitely is entitled to his money, doesn't give him the right to intervene in a criminal proceeding." The State further argued as follows:

"MR. ZALAR [(SPECIAL PROSECUTOR)]: All of the judgment at this point is delinquent, so [Roberts] has the right to file [a civil complaint to enforce the judgment]. I note that he's already filed a separate civil proceeding trying to collect other damages. So there really isn't anything that would prevent him from just filing one simple little complaint that says, 'Judge, we move to—we petition the Court to enforce the judgment,' he would be entitled to summary judgment on that and then he would have the right to request a Citation to Discover Assets and to garnish the defendant's wages assuming that he—[defendant's] wages assuming that he's still working. That's the way he has to proceed, Judge, not through the criminal proceeding."

The court entered a written order denying Roberts's motion to reconsider. The court ruled that Roberts had to "bring a petition to collect [the] unpaid amount on the criminal judgment of restitution in a separate civil action."

¶ 8 This appeal followed.

¶ 9 II. ANALYSIS

¶ 10 On appeal, Roberts argues the trial court erred in ruling that he lacked standing to enforce the restitution judgment in his favor by way of initiating indirect civil contempt proceedings in defendant's criminal case. The State concedes that the court erred, asserting that

Roberts's "Motion to Hold Defendant in Contempt" initiated "an indirect civil contempt proceeding and was properly filed in the criminal case as a continuation of the case." "The issue of standing presents a question of law that this court reviews *de novo*." (Internal quotation marks omitted.) *Guns Save Life, Inc. v. Raoul*, 2019 IL App (4th) 190334, ¶ 16.

¶ 11     Section 5-5-6 of the Unified Code of Corrections (Restitution Statute) (730 ILCS 5/5-5-6 (West 2018)) provides that trial courts must impose a sentence of restitution in all convictions for certain criminal offenses and may, when appropriate, impose a sentence of restitution in all other cases. Subsection (m) of the Restitution Statute provides the following, in pertinent part:

> "(m) A restitution order under this Section is a judgment lien in favor of
> the victim that:
>
>> (1) Attaches to the property of the person subject to the order;
>>
>> ***
>>
>> (3) May be enforced to satisfy any payment that is delinquent
>
> under the restitution order by the person in whose favor the order is issued or the
>
> person's assignee." *Id.* § 5-5-6(m)(1), (3).

The Restitution Statute further provides that a "restitution order under this Section may be enforced in the same manner as judgment liens are enforced under Article XII of the Code of Civil Procedure." *Id.* § 5-5-6. Section 12-107.5 of the Code of Civil Procedure (735 ILCS 5/12-107.5 (West 2018)) sets forth the process for enforcing judgment liens through contempt proceedings:

> "(a) No order of body attachment or other civil order for the incarceration
>
> or detention of a natural person respondent to answer for a charge of indirect civil

- 4 -

contempt shall issue unless the respondent has first had an opportunity, after personal service or abode service of notice as provided in Supreme Court Rule 105, to appear in court to show cause why the respondent should not be held in contempt.

(b) The notice shall be an order to show cause." *Id.* § 12-107.5(a)-(b).

¶ 12 "Contempt of court has been defined as any act that is calculated to embarrass, hinder, or obstruct a court in the administration of justice, or that is calculated to lessen its authority or dignity." *People v. Budzynski*, 333 Ill. App. 3d 433, 438 (2002). "Contempt of court may be classified as civil or criminal and further classified as direct or indirect. A direct contempt is a contempt committed in the presence of the court while it is in session. An indirect contempt is a contempt outside the presence of the court." *Id.* "The primary determinant of whether contempt proceedings are civil or criminal in nature is the purpose for which contempt sanctions are imposed." *In re Marriage of Betts*, 200 Ill. App. 3d 26, 43 (1990). "If contempt sanctions are imposed for coercive purposes—to compel the contemnor to perform a particular act—the contempt is civil in nature. On the other hand, criminal contempt sanctions are imposed for the purpose of punishing past misconduct." *Id.* "Indirect civil contempt is a continuation of the original cause of action [citations], whereas indirect criminal contempt is a separate and distinct proceeding in and of itself and is not part of the original case being tried when the contemptuous act occurred." *Budzynski*, 333 Ill. App. 3d at 438; *cf. People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 172 (1981) (describing an indirect civil contempt proceeding as "an original special proceeding, collateral to and independent of, the case in which the contempt arises").

¶ 13 This court has described the distinctive characteristics of civil contempt

proceedings as follows:

> "Civil contempt proceedings have two fundamental attributes: (1) The contemnor must be capable of taking the action sought to be coerced, and (2) no further contempt sanctions are imposed upon the contemnor's compliance with the pertinent court order. [Citations.] In other words, the contemnor must have an opportunity to purge himself of contempt by complying with the pertinent court order. If the contempt sanction is incarceration, the respondent's circumstances should be such that he may correctly be viewed as possessing the keys to his cell." (Internal quotation marks omitted.) *Betts*, 200 Ill. App. 3d at 44.

We have also explained the process to be followed in indirect civil contempt proceedings:

> "A petition for a rule to show cause is the method for notifying the court that a court order may have been violated, and the petitioner requests a hearing on the issue. The petition for a rule to show cause and the rule to show cause operate together to inform the alleged contemnor of the allegations against her. The rule to show cause is the method by which the court brings the parties before it for a hearing. It also notifies the alleged contemnor of the time and place of the hearing. Thus, the petition for a rule to show cause initiates the contempt proceedings, but it does not establish that a violation of a court order has in fact occurred. The rule to show cause, issued by the court, is not a finding a violation of a court order has occurred, but part of the process of notifying the alleged contemnor of the charges, and time and place of the hearing. At the hearing, the burden is on the petitioner to show a violation of a court order has occurred. Once this showing has been made, the burden shifts to the alleged contemnor to show

the violation was not wilful." *In re Marriage of LaTour*, 241 Ill. App. 3d 500, 508 (1993).

¶ 14 Here, it is undisputed that Roberts is a judgment creditor in light of the sentence of restitution imposed against defendant and in favor of Roberts, and the State conceded at the hearing on Roberts's motion to reconsider that "[a]ll of the judgment at this point is delinquent." Subsection (m) of the Restitution Statute provides that restitution orders may be enforced "by the person in whose favor the order is issued" and in the same manner that judgment liens are enforced under article XII of the Code of Civil Procedure. 730 ILCS 5/5-5-6(m) (West 2018). Section 12-107.5 of the Code of Civil Procedure states that a judgment creditor may seek to enforce a judgment through indirect civil contempt proceedings, so long as the respondent has received notice by way of an order to show cause and has been afforded an opportunity to appear in court to show cause why he should not be held in contempt. See 735 ILCS 5/12-107.5(a)-(b) (West 2018).

¶ 15 In this case, Roberts attempted to enforce the judgment in his favor by filing, in defendant's criminal case, a "Motion to Hold Defendant in Contempt." Considering the substance of Roberts's motion, it was, fundamentally, a petition for a rule to show cause. See, *e.g.*, *Betts v. City of Chicago*, 2013 IL App (1st) 123653, ¶ 12 ("[T]he substance of the motion, rather than the label, determines what the motion is."). It is also apparent that the petition described an act of indirect civil contempt, as it sought to coerce defendant to perform a particular act—*i.e.*, pay the amount of restitution owed—rather than punish him for past conduct. See *Betts*, 200 Ill. App. 3d at 43. As stated above, "[i]ndirect civil contempt is a continuation of the original cause of action." *Budzynski*, 333 Ill. App. 3d at 438.

¶ 16 Regarding the issue of standing, we see no reason why only the State, and not the

victim, should be able to pursue contempt actions in a criminal case where restitution is ordered. Indeed, the Restitution Statute clearly provides that a restitution order is a "judgment lien in favor of the victim" and that it "[m]ay be enforced *** by the person in whose favor the order is issued." 730 ILCS 5/5-5-6(m) (West 2018); *Del Dotto v. Olsen*, 257 Ill. App. 3d 463, 464 (1993) ("[T]he private litigant who brings the facts of an indirect contempt, civil or criminal in nature, before the court performs a valuable service to the court."). Thus, based on the Restitution Statute, section 12-107.5 of the Code of Civil Procedure, and the case law on contempt, we conclude Roberts had standing to file a petition for a rule to show cause in defendant's criminal case. Accordingly, we agree with the parties and find that the trial court erred in ruling Roberts lacked standing to initiate indirect civil contempt proceedings and striking his pleading.

¶ 17                                III. CONCLUSION

¶ 18            For the reasons stated, we reverse the trial court's judgment.

¶ 19            Reversed.

*People v. Martin*, 2024 IL App (4th) 240629

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Brown County, No. 19-CF-13; the Hon. Jerry J. Hooker, Judge, presiding. |
| **Attorneys for Appellant:** | Jesse R. Gilsdorf, of Mt. Sterling, for appellant. |
| **Attorneys for Appellee:** | Michael Hill, State's Attorney, of Mt. Sterling (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |